IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| Frankie H. Leopard, | ) | |
|---|---|---|
| | ) | Civil Action No. 6:17-cv-02712-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

The plaintiff, Frankie H. Leopard ("Leopard"), brought this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"),[1] denying his claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a), D.S.C., this matter was referred to a magistrate judge for pretrial handling. Before this court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court affirm the Commissioner's decision. (ECF No. 24).[2] In the Report, the magistrate judge sets forth the relevant facts and legal standards, which are incorporated herein by reference. Leopard filed objections to the Report (ECF No. 26), and the Commissioner responded to those objections (ECF No. 30). Accordingly,

---

[1] Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Fed. R. Civ. P. 25(d), the court substitutes Berryhill for Carolyn W. Colvin as the defendant in this action.

[2] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

this matter is now ripe for review.

**BACKGROUND**

On May 30, 2014, Leopard applied for DIB and SSI, alleging a disability onset date of July 20, 2011. (ECF No. 10-2 at 19). These claims were denied both initially and on reconsideration by the Social Security Administration ("SSA"). (ECF No. 10-3). Leopard then requested a hearing before an Administrative Law Judge ("ALJ"), and on September 28, 2016, the ALJ conducted a hearing on Leopard's claims for DIB and SSI. (ECF No. 10-2). Leopard was represented by counsel at the hearing. On December 6, 2016, the ALJ issued an opinion finding that Leopard was not disabled. (ECF No. 10-2 at 19–39).

In her decision, the ALJ found Leopard met the insured status requirements under the Social Security Act through December 31, 2016, and that Leopard had not engaged in substantial gainful activity since July 20, 2011, the alleged onset date of disability. (ECF No. 10-2 at 21). The ALJ further found that Leopard suffered from the following severe impairments: degenerative disc disease of the cervical spine, lumbago, degenerative joint disease of the right shoulder, right wrist and right ulnar neuropathy, migraine headaches, depression, anxiety, and borderline intellectual functioning/neurocognitive disorder. *Id.* In reviewing all of Leopard's impairments, the ALJ concluded that he did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 22. Additionally, the ALJ calculated Leopard's residual functional capacity ("RFC") and determined that he could perform light work with various limitations.[3] Due to these limitations, the ALJ determined that Leopard is unable to

---

[3] Specifically, the ALJ concluded that Leopard could perform light work "except he can lift less than 10 pounds with right dominant hand,but is able to lift 20 pounds occasionally and 10 pounds frequently with both hands." Additionally, the ALJ concluded that Leopard "limited to only occasional climbing of stairs; no climbing ladders,

perform his past relevant work of being a driver/sales rout worker, flatbed truck driver, and warehouse worker. (ECF No. 10-2 at 32–33). However, the ALJ determined that based on Leopard's age, education, work experience, and RFC calculation, there were "jobs that existed in significant numbers in the national economy that [he] can perform." *Id.* at 33. Accordingly, the ALJ determined that Leopard was not disabled as defined in the Social Security Act. *Id.* at 34. Leopard subsequently appealed to the Appeals Council, and the Appeals Council denied Leopard's request for review of the ALJ's decision. *Id.* at 2–5. Therefore, the ALJ's decision became the final decision of the Commissioner. This action followed.

## STANDARD OF REVIEW

The federal judiciary has a limited role in the administrative scheme established by the SSA. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined . . . as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). Thus, in its review, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] own judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

However, "[f]rom this it does not follow . . . that the findings of the administrative

---

ropes or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; frequent handling with his right dominant hand; occasional overhead reaching on the right; and no overhead work." Furthermore, the ALJ noted that Leopard should "avoid all exposure to dangerous machinery and unprotected heights." Finally, in relation to the RFC, the ALJ stated that Leopard is "able to perform simple, routine tasks for at least two hours at a time before taking a normal 15- minute break or once daily 30-minute lunch break in a work environment which provides only occasional contact with the public." (ECF No. 10-2 at 24).

3

agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Rather, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

## DISCUSSION

The magistrate judge filed a Report, recommending that the decision of the Commissioner be affirmed. (ECF No. 24). Leopard timely filed objections to the Report. (ECF No. 26). The Commissioner replied to these objections and further argued that Leopard's objections were simply a reiteration of arguments already before the magistrate judge. (ECF No. 30). The matter is now ripe for review.

The court recognizes that Leopard's objections appear to largely be reiterations of the issues raised in his brief (ECF No. 19), and to extent that the objections are simply restatements of arguments already fully presented to the magistrate judge for review, they do not constitute specific objections to the Report. *See Nichols v. Colvin*, No. 2:14-cv-50, 2015 UL 1185894, at *8 (E.D. Va. Mar. 13, 2015) (finding that the rehashing of arguments raised to the magistrate judge does not comply with the requirement to file specific objections); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as the term is used in this context."). However, Leopard's objections do contain several specific reasons that he disagrees with the magistrate judge's assessment of those claims. Accordingly, the court will consider the following objections: (1) that the magistrate judge erred in finding that the ALJ properly considered the medical opinion

of Dr. Scott; (2) that the magistrate judge erred in finding that the ALJ properly considered the medical opinion of Dr. Saad; and (3) that the magistrate judge erred in finding that the ALJ properly considered Leopard's subjective symptoms. (ECF No. 26).

In his Report, the magistrate judge laid out the standard that an ALJ must follow in considering a treating physician's opinion, which the court incorporates herein. (ECF No. 24 at 17). The magistrate judge concluded that the ALJ properly considered the medical opinions of Dr. Scott and Dr. Saad based on this standard and explained her reasoning for assigning those opinions only partial weight. (ECF No. 24 at 18–19, 22–23). As the ALJ and the magistrate judge both acknowledged, Dr. Scott, Leopard's treating neurologist, opined regarding Leopard's limitations and disability. (ECF Nos. 10-2 at 31, 24 at 18). The ALJ considered Dr. Scott's opinion, and in light of the other evidence in the record, gave such opinion partial weight. (ECF No. 10-2 at 31). In determining that Dr. Scott's opinion should only be given partial weight, the ALJ noted that she gave weight to the functional limitations described in Dr. Scott's opinion and incorporated them generally into the RFC calculation. *Id.* However, the ALJ found that Dr. Scott's opinion that Leopard would "be distracted or unable to complete tasks as much as 15 to 20 percent 'of any given workday'" was inconsistent with the medical record. *Id.*

Leopard objects to the magistrate judge's determination that the ALJ properly considered Dr. Scott's medical opinion, arguing specifically that symptoms being "relatively well controlled" does not mean that those symptoms were "cured and resolved." (ECF No. 26 at 2). Leopard contends that Dr. Scott's opinion that Leopard would be off task fifteen to twenty percent of the workday was reasonable given the "incompletely controlled symptoms" and the side effects from the medication, and that, therefore, the opinion should have been given more weight. *Id.*

5

The ALJ stated that the reason she gave only partial weight to Dr. Scott's opinion was because the opinion was inconsistent with the other evidence in Leopard's medical record. (ECF No. 10-2 at 31). As the Fourth Circuit has held, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In reviewing the evidence, the ALJ noted that Leopard's treatment history was conservative and that his symptoms were "relatively controlled with medications." (ECF No. 10-2 at 31). In fact, Dr. Scott's own reports state that "[f]or the most part [Leopard's] symptoms are controlled conservatively with hydrocodone and Felxeril" and that these medications work "pretty well." (ECF No. 10-13 at 3–4). Dr. Scott wrote this report the same day that he issued the opinion stating that Leopard was disabled. *Compare id.* at 3 – 4 *with id.* at 24. The Fourth Circuit has specifically stated that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). However, Leopard contends that these untreated symptoms, mixed with Leopard's side effects from the medications, support Dr. Scott's opinion.[4] (ECF No. 26 at 2). Furthermore, when asked at his hearing if he had any side effects from the medication, Leopard first stated that he had no side effects from his medications. (ECF No. 10-2 at 52). Then, when his attorney re-asked the question, Leopard stated that his medications cause "maybe a little fatigue" and make him "drowsy at times." *Id.* at 55. The ALJ considered the purported side effects when evaluating

---

[4] Notably, it seems that Leopard's objections regarding Dr. Scott pertain only to the portion of his opinion describing Leopard being off task and how the ALJ treated that portion of the opinion. As to this objection, the court notes that the medications described by Dr. Scott, and now discussed by Leopard in his objections, were prescribed for Leopard's back pain, not for his "cognitive dysfunction." In his opinion, Dr. Scott specifically states that Leopard's alleged "cognitive dysfunction" was the reason that Leopard would be off task excessively. (ECF No. 10-13 at 24). Accordingly, the objection as to the "uncured" symptoms is without merit and ultimately misplaced.

medical opinions and calculating the RFC, [5] noting specifically in her decision that Leopard claimed his medication made him "drowsy." *Id.* at 25.

In evaluating Leopard's mental functions, while in December 2013, Dr. Scott indicated that there was a "departure" in Leopard's mental functioning (ECF No. 10-12 at 40), no such departure was noted in the remainder of Dr. Scott's reports. Instead, throughout his treatment of Leopard, Dr. Scott stated that Leopard's mental status was "intact" or at "baseline." (ECF Nos. 10-13 at 37, 39, 41, 58, 62, 65; 10-13 at 3, 6, 9, 12). In fact, in 2016, on the same date that Dr. Scott issued his opinion stating that Leopard was disabled and that he would require extensive breaks and absences, Dr. Scott observed Leopard's mental status to be "baseline and intact" and made no mention of any mental deficiencies. (ECF No. 10-13 at 3). Accordingly, Dr. Scott's opinion as to Leopard's needing excessive breaks and absences contradicted his own reports.[6]

Furthermore, Leopard's contention that the side effects of his medication supported Dr. Scott's opinion does not negate the various contradictory evidence in the record, and it is not this court's place on review to reweigh the evidence, evaluate credibility, or substitute its judgement for the ALJ's. *Craig*, 76 F.3d at 589. The record reflects various inconsistencies within Dr. Scott's own medical reports as well as inconsistencies with other evidence in the record. Accordingly, the court finds that the ALJ's decision to give Dr. Scott's opinion only partial weight is supported by substantial evidence. Therefore, the court overrules this objection.

Leopard also objects to the magistrate judge's determination that the ALJ properly considered Dr. Saad's medical opinion, arguing that Dr. Saad recognized Leopard's "symptoms

---

[5] Furthermore, the ALJ noted that she considered all of the evidence in the record. The ALJ's opinion reveals a detailed and thorough account of Leopard's medical history and subjective complaints, as well as an in-depth analysis as to the effects of Leopard's impairments on his ability to work.

[6] This opinion was also inconsistent with the opinion by Dr. Baumgarten allowing Leopard to go back to work with no restrictions following the accident that caused Leopard's symptoms and resulted in him leaving work. (ECF No. 10-8 at 35).

7

of pain and loss of range of motion had not been cured or resolved" and noted the "sedating side effects" of Leopard's medications. (ECF No. 26 at 2). Accordingly, Leopard contends that Dr. Saad's opinion that Leopard would be "off task and miss work for an unacceptable amount of time" should have been given more weight. (ECF No. 26 at 2).

First, the court notes that Dr. Saad was an examining source and not a treating physician. (ECF No. 10-12 at 19) (stating that Dr. Saad explained to Leopard "that he was to be evaluated only and that no treatment would be provided."). Accordingly, Dr. Saad's opinion is not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Additionally, the ALJ stated that the reason she gave partial weight to Dr. Saad's opinion, with little weight given to the portion of the opinion regarding frequent breaks and absences, is that such determination was contradictory to the evidence in the record. (ECF No. 10-2 at 31). Specifically, the ALJ stated that the opinion was "inconsistent with [Leopard's] treatment history showing that his symptoms are relatively controlled with medications and with imaging and other diagnostic studies that demonstrated only mild findings." *Id.* As stated above, if an ALJ determines that a medical opinion is inconsistent with the other clinical or substantial evidence, she may give the opinion less weight. *See Chater*, 76 F.3d at 585.

As noted by the ALJ, Dr. Saad's statements regarding Leopard's allegedly debilitating pain are inconsistent with the evidence in the record that Leopard's symptoms were controlled with medication. Notably, Dr. Saad's opinion, dated August 14, 2013, was written prior to Leopard receiving any narcotic pain medication from Dr. Scott. Dr. Scott did not prescribe Leopard hydrocodone to help with his pain until October 28, 2014, and thereafter, Dr. Scott stated that Leopard's symptoms were "controlled conservatively" and that the medication worked "pretty well to control things." (ECF Nos. 10-12 at 66, 10-13 at 3–4). Additionally, while

8

Leopard contends in his objections that Dr. Saad "recognized the sedating side effects from the medication," (ECF No. 26 at 2), he does not cite to anywhere in the record to support this. In thoroughly reviewing Dr. Saad's notes, the court has found no mention of "sedating side effects" from any medication. As discussed above, the court's review is not meant to reweigh the evidence, evaluate credibility, or substitute its judgement for the ALJ's. *Craig*, 76 F.3d at 589. The ALJ explained that Dr. Saad's opinion was given only partial weight because it was inconsistent with the record, and the court finds that this is supported by substantial evidence. Accordingly, the court overrules this objection.

Finally, the magistrate judge determined that the ALJ properly considered Leopard's subjective symptoms based on the evidence in the record. (ECF No. 23–28). Leopard objects to this finding, stating that the ALJ did not take into consideration the side effects of the medications or the fact that the symptoms were not "cured or fully resolved" by medications. (ECF No. 26 at 2). Additionally, Leopard argues that the ALJ's finding that Leopard's "complaints were no[t] consistent with his one-time report from June 2014 or the reports from November 2013 or August 2014" assumed that Leopard's "medical and physical condition [was] static" and that such finding did not fully consider the symptoms as reported at the hearing before the ALJ. *Id.*

The fact that a symptom is not "cured or fully resolved" does not render such symptom disabling. *See Gross*, 785 F.2d at 1166 (stating that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"). Furthermore, the ALJ provided a thorough explanation of Leopard's symptoms and subjective complaints and determined that while Leopard's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Leopard's statements regarding "the intensity, persistence and limiting

effects of [those] symptoms [was] not entirely consistent with the medical evidence and other evidence in the record." (ECF No. 10-2 at 25). In reaching this conclusion, the ALJ noted that Leopard gave contradicting answers regarding his daily activities; that his medical records indicated conservative treatment consisting of injections, physical therapy, and pharmacotherapy; and that medications were effective in treating Leopard's symptoms. *Id.* at 25–26. The ALJ then gave a detailed synopsis of the medical reports when evaluating Leopard's symptoms in light of the medical evidence.

In considering the contradictory statements regarding his daily activities, the ALJ discussed, in detail, Leopard's hearing testimony, Leopard's "Function Report," and the statements that Leopard made to his physicians. *Id.* at 25. Accordingly, Leopard's assertion that the ALJ did not "fully consider his symptoms as reported at the hearing" is without merit.[7] Likewise, Leopard's contention that the ALJ ignored the side effects of his medication is without merit. In reviewing Leopard's symptoms, the ALJ specifically stated that Leopard "reported he takes pain medication that makes him drowsy." *Id.* Accordingly, the court overrules this objection because the ALJ's evaluation of Leopard's subjective symptoms was supported by substantial evidence.

## CONCLUSION

Having conducted the required *de novo* review of the issues to which Leopard has objected, the court adopts the Report (ECF No. 24) for the reasons stated herein. The court concludes that the Commissioner's findings were supported by substantial evidence and are

---

[7] Furthermore, the ALJ relied on more than Leopard's contradictory statements about his daily functioning when evaluating his symptoms. In viewing all the evidence, the ALJ determined that Leopard's subjective statement of his symptoms was inconsistent with much of the record. Accordingly, the fact that the ALJ only had statements from 2013 and 2014 regarding Leopard's daily activities does not undermine the ALJ's analysis, especially since Leopard is contending a disability onset date of July 2011. Furthermore, medical reports from 2016 indicate that Leopard's physical limitations "remain[ed] the same" as when he was treated in 2013. (ECF No. 10-13 at 9, 12, 24).

without legal error. Accordingly, the Commissioner's final decision is **AFFIRMED.**

**IT IS SO ORDERED.**

s/Timothy M. Cain<br>United States District Judge

Anderson, South Carolina
January 18, 2019